```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/31/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KERRI FLOWERS,

                Plaintiff,

-against-

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

                Defendant.

1:21-cv-05388-MKV

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

MARY KAY VYSKOCIL, United States District Judge:

       This is an ERISA dispute. Plaintiff Kerri Flowers seeks judicial review of the termination by Defendant Hartford Life and Accident Insurance Company ("Hartford") of her long-term disability benefits under an ERISA-governed welfare benefit plan. Both parties move for summary judgment. For the following reasons, Hartford's motion for summary judgment is GRANTED and Flowers' motion for summary judgment is DENIED.

## BACKGROUND

       Flowers is 51 years old. Plaintiff's Local Rule 56.1(B) Response to Hartford's Statement of Facts ¶ 1 [ECF No. 60] ("Def. 56.1").[1] She has a bachelor's degree and possesses "semi-expert" computer proficiency. Administrative Record 908 [ECF No. 55] ("AR").[2] Flowers was most recently employed by Duane Reade as a Regional Human Resources Manager. Def. 56.1 ¶ 2. Through her employment, Flowers was covered under a group long term disability ("LTD") policy governed by ERISA ("the Policy"). Def. 56.1 ¶¶ 5, 6. The Policy was issued and administered by Hartford. Def. 56.1 ¶ 7.

---

[1] Citations to "Def. 56.1" collate Hartford's Rule 56.1 Statement and Flowers' response to each statement.

[2] Pincites to the Administrative Record refer to the Bates stamped numbers.

1.      *The Policy*

The Policy defines "disability" or "disabled" to mean: "You are prevented from performing one or more of the Essential Duties of: [(1)] Your Occupation during the Elimination Period;[3] [(2)] Your Occupation, for the 24 month(s) following the Elimination Period, and as a result Your Current Monthly Earnings are less than 80% of Your Indexed Pre-disability Earnings; and [(3)] after that, Any Occupation." AR 93. "Any Occupation" is defined as "any occupation for which You are qualified by education, training *or* experience." AR 93 (emphasis added).

"Benefit payments" stop on "the date You are no longer Disabled." AR 87. However, "If You are Disabled because of: [(1)] Mental Illness that results from any cause; [or] [(2)] any condition that may result from Mental Illness," then the duration of benefits is limited to "a total of 24 month(s) for all such disabilities during your lifetime." AR 86.

Importantly, the Policy repeatedly states that Hartford retains "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." AR 92, 101, 103.

2.      *Hartford's Initial Approval of Flowers' Claim for LTD Benefits*

Flowers stopped working for Duane Reade on September 16, 2008. Def. 56.1 ¶ 15. At the time, she was diagnosed with a seizure disorder and bipolar disorder. Def. 56.1 ¶ 16. Flowers later applied for LTD benefits, which Hartford approved as of December 22, 2008. Def. 56.1 ¶ 18.

After 24 months, Hartford determined that Flowers continued to be disabled from performing "Any Occupation." Def. 56.1 ¶ 20. Flowers thereafter received LTD benefits for nearly a decade, during which time she was also diagnosed with fibromyalgia and several musculoskeletal conditions, including cervical degenerative disc disease, lumbar degeneration,

---

[3] The "Elimination Period" is defined as 90 days. AR 83.

and bilateral carpal tunnel syndrome.  Defendant's Response to Plaintiff' Local Rule 56.1(a) Statement ¶ 10 [ECF No. 53] ("Pl. 56.1").[4]

### 3. *Hartford's Denial of Flowers' Claim for Continuing LTD Benefits*

Hartford began a review of Flowers' claim for continuing benefits in 2019.  Def. 56.1 ¶¶ 22–23.  Through a third-party vendor, Hartford arranged for an Independent Medical Examination ("IME") to be performed by Dr. Jeffrey Liva, who is board certified in occupational medicine.  Def. 56.1 ¶ 22.

Dr. Liva ultimately concluded that, with respect to her "musculoskeletal" conditions, Flowers *could* "sustain functionality of 8 hours per day, 40 hours per week."  Def. 56.1 ¶¶ 28, 33; AR 1645–46.  Following the examination, Dr. Liva issued a 20-page report, noting that he had "carefully reviewed" Flowers' medical records.  Def. 56.1 ¶ 24.  Relevant here, Dr. Liva reported the following observations:

- Flowers was a "well-developed, well-nourished, overweight female" who "appear[ed] healthy."  Def. 56.1 ¶ 25; AR 1643.

- Flowers' "chief complaint" was "widespread sharp pain," but it was "improved by medication."  Def. 56.1 ¶ 26; AR 1641.

- Flowers was "able to perform all activities of daily living," including cooking, light cleaning, and driving four blocks.  Def. 56.1 ¶ 27; AR 1641–42.

- Flowers reported "tenderness . . . over both shoulders and [her] upper and lower spine" and appeared "mildly uncomfortable" during the examination.  AR 1698–99.

- Flowers experienced no limitations with respect to speaking, vision, or hearing.  Def. 56.1 ¶ 31; AR 1645.

Dr. Liva did *not* "opine on [Flowers'] psychiatric disorders."  Def. 56.1 ¶ 33; AR 1645.  Hartford sent a copy of Dr. Liva's report (the "IME Report") to Flowers' treating physicians, Dr. Pintauro

---

[4] Citations to "Pl. 56.1" collate Flowers' Rule 56.1 Statement and Hartford's response to each statement.

(internist), Dr. Barone (rheumatologist), and Dr. Andrus (physical medicine and rehabilitation) for review and comment. Def. 56.1 ¶ 35. Dr. Pintauro indicated that he agreed with Dr. Liva's conclusions. Def. 56.1 ¶ 36; AR 1710. Drs. Barone and Andrus did not respond. Def. 56.1 ¶ 37.

With respect to Flowers' psychiatric disorders, Flowers informed Hartford in August 2019 that she was "in the process of finding a new psych[ologist]" and that "the last time she saw [a psychiatrist] was last year." Def. 56.1 ¶ 38; AR 160. Several months later, in April 2020, Flowers again confirmed that she was not under the care of a psychiatrist or psychologist. Def. 56.1 ¶ 40.

Following the IME, a Vocational Rehabilitation Clinical Case Manager, Lisa Screen Housley, performed an Employability Analysis Report ("EAR"). Def. 56.1 ¶ 41. The EAR identified five occupations that Flowers was qualified to perform and would be functionally capable of performing "with minimal learning." [5] Def. 56.1 ¶¶ 44, 45; AR 1726. Housley noted that those occupations "exist in reasonable numbers in the national economy." Def. 56.1 ¶ 46.

On April 7, 2020, Hartford informed Flowers that her claim for continuing LTD benefits was denied, effective the following day. Def. 56.1 ¶ 47; *see* AR 580–87.

4.  *Flowers' Administrative Appeal*

Flowers filed an administrative appeal. Def. 56.1 ¶ 53; *see* AR 1805–09. She contended that she "lack[ed] the functional capacity to perform any . . . type of full-time work because of her severe fibromyalgia, cervical radiculopathy, lumbar degeneration, and bilateral carpal tunnel syndrome." Def. 56.1 ¶ 55; AR 1806. Flowers submitted medical records in support of her appeal, including:

- Progress notes from Dr. Barone indicating that, as of November 2018, Flowers "continue[d] with fibromyalgia pain" but it "seem[ed] less than before." Def. 56.1 ¶ 56; AR 1865. Dr. Barone also comments that Flowers had no inflamed joints, swelling, or deformity, her grip was "good," her range of motion in the hips and knees was "normal,"

---

[5] The occupations are Personnel Manager, Employment Manager, Employee Relations Specialist, Equal Opportunity Officer, and Employment Agency Manager. Def. 56.1 ¶ 50; AR 585.

4

- her reflexes were "equal," and her internal and external rotator muscles were "less limited." Def. 56.1 ¶ 57; AR 1865.

- Office visit notes from Dr. Andrus describing Flowers as "[w]ell developed, well nourished, [and] in no acute distress." Def. 56.1 ¶ 64; AR 1910. Dr. Andrus notes that Flowers had previously been diagnosed with "very mild" right carpal tunnel syndrome, a "mild" cervical herniated disk, fibromyalgia, and chronic pain syndrome. Def. 56.1 ¶ 60; AR 1907. Upon examination, Dr. Andrus concludes that Flowers had "normal cervical spine alignment," "[n]ormal posture," and muscle strength of "5/5." Def. 56.1 ¶ 64; AR 1910. Dr. Andrus also finds that Flowers had "severely restricted" range of motion in her shoulders. Pl. 56.1 ¶ 44; AR 1890. In addition, Dr. Andrus remarks that an electromyography ("EMG") test did "not find a Radiculopathy." Def. 56.1 ¶ 61; AR 1907.

- The results of a Functional Capacity Evaluation ("FCE") test, indicating that Flowers "is unable to work at this time" or "at any time in the near future." Def. 56.1 ¶ 68; AR 1931.

- Another EAR, commissioned by Flowers, concluding that she was unable to perform "Any Occupation" as defined by the Policy. Def. 56.1 ¶¶ 69, 70; AR 1945.

Hartford subsequently referred Flowers' medical records to a third-party vendor, who assigned two Independent Physician Consultants ("IPC"): Dr. Diana Hussain and Dr. Alfred Becker. Def. 56.1 ¶ 73. Dr. Hussain, who is board certified in physical medicine, rehabilitation, and pain medicine, noted that "[w]hile [Flowers] reports pain with cervical range of motion, there are no documented range of motion deficits/reduction, no sensory deficits, weakness to the upper and/or lower extremities, and no reflex abnormalities." Def. 56.1 ¶¶ 73, 76; AR 1980. Dr. Hussain therefore concluded that Flowers' "abilities are sustainable 40 hours per week, with no restrictions and limitations." Def. 56.1 ¶ 77; AR 1980. Similarly, Dr. Becker, who is board certified in internal medicine and rheumatology, commented that the "documentation did not clearly indicate medical necessity for restrictions and/or limitations from 04/08/2020 to [the] present" and opined that Flowers' abilities were "sustainable 40 hours/week from a rheumatology standpoint." Def. 56.1 ¶¶ 73, 79, 80; AR 1983.[6]

---

[6] Drs. Hussain and Becker attempted to schedule peer-to peer calls with Flowers' treating physicians, but those physicians did not respond. Def. 56.1 ¶¶ 75, 81. Similarly, Drs. Hussain and Becker sent their reports to Flowers' treating physicians for review and comment and received no response. Def. 56.1 ¶ 88.

Based on the findings of Drs. Hussain and Becker and "a comprehensive review of all information in [Flowers'] claim file," Hartford upheld its initial adverse benefit determination on appeal. Def. 56.1 ¶¶ 90, 91; AR 565–70.

5. *Procedural Posture*

Flowers filed this action in June 2021, seeking judicial review under 29 U.S.C. § 1132 ("ERISA Section 502(a)(1)(B)"). *See* Complaint [ECF No. 1]. Hartford answered the Complaint. *See* Answer [ECF No. 10]. Now pending before the Court are the parties' cross-motions for summary judgment. *See* Flowers' Motion for Summary Judgment [ECF No. 56]; Memorandum of Law in Support [ECF No. 57] ("Pl. Mem."); Hartford's Motion for Summary Judgment [ECF No. 48]; Memorandum of Law in Support [ECF No. 50] ("Def. Mem."). Both parties filed opposition briefs, *see* Memorandum of Law in Opposition [ECF No. 59] ("Def. Opp."); Memorandum of Law in Opposition [ECF No. 52] ("Pl. Opp."), and replies, *see* Reply Memorandum of Law [ECF No. 61] ("Pl. Reply"); Reply Memorandum of Law [ECF No. 54] ("Def. Reply").

## LEGAL STANDARDS

**I.      Summary Judgment Standard**

To prevail on a motion for summary judgment, the movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The Court's role at this stage is "not to resolve disputed issues of fact but to assess whether there are

6

any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

"[T]he burden of demonstrating that no material fact exists lies with the moving party." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). "This standard applies equally to cases, like the instant one, in which both parties moved for summary judgment." *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). "As a result, when parties have filed cross-motions for summary judgment, the court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Id.* (quoting *Hotel Emps. & Rest. Emps. Union, Loc. 100 v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)).

## II.     ERISA Standard

"[A]s a matter of general insurance law, the insured has the burden of proving that a benefit is covered." *Critchlow v. First UNUM Life Ins. Co.*, 378 F.3d 246, 256 (2d Cir. 2004) (citation omitted). This principle is equally "applicable in ERISA cases." *Id.*

"A denial of benefits challenged under [ERISA Section 502(a)(1)(B)] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where, as here, an administrator is granted discretionary authority, a court "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009) (citation omitted).

This "scope of review is narrow." *O'Shea v. First Manhattan Co. Thrift Plan & Tr.*, 55 F.3d 109, 112 (2d Cir. 1995). Indeed, a decision is "arbitrary and capricious" only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Krauss v. Oxford*

*Health Plans, Inc.*, 517 F.3d 614, 623 (2d Cir. 2008) (citation omitted). "Substantial evidence" is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker and requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (cleaned up).

The Court's review is limited to the administrative record. *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003); Order on Discovery Dispute [ECF No. 25].

## DISCUSSION

### I.   Hartford's Determination was Supported by Substantial Evidence

Hartford contends that it is entitled to summary judgment because its denial of Flowers' claim for continuing LTD benefits was not arbitrary and capricious and was, instead, based on "numerous items of substantial evidence." Def. Mem. 19. Hartford is correct.

The administrative record includes the following pieces of evidence:

- The IME Report performed by Dr. Liva, concluding that Flowers could "sustain functionality of 8 hours per day, 40 hours per week." Def. 56.1 ¶ 28; AR 1645–46.

- The statement from Flowers' own treating internist, Dr. Pintauro, indicating that he agreed with the findings of the IME Report. Def. 56.1 ¶ 36; AR 1710.

- The notes from Dr. Barone, Flowers' rheumatologist, suggesting that Flowers' fibromyalgia pain "seem[ed] less than before," that Flowers had no inflamed joints, swelling or deformity, her grip was "good," her range of motion in the hips and knees was "normal," her reflexes were "equal," and her internal and external rotator muscles were "less limited." Def. 56.1 ¶¶ 56, 57; AR 1865.

- The notes from Dr. Andrus, Flowers' physical medicine and rehabilitation doctor, stating that Flowers had "normal cervical spine alignment," "[n]ormal posture," muscle strength of "5/5," and was "in no acute distress." Def. 56.1 ¶¶ 61, 64; AR 1907, 1910.

- Flowers' statements to Hartford that she had not seen a mental health provider since 2018. Def. 56.1 ¶¶ 38, 40; AR 160.

- The EAR completed by Housley, indicating that there are several occupations for which Flowers is qualified to perform. Def. 56.1 ¶¶ 44, 46; AR 1726.

- The reports issued by Dr. Hussain and Dr. Becker, each concluding that Flowers was medically capable of working 40 hours per week. Def. 56.1 ¶¶ 77, 79.

Taken together, this evidence clearly amounts to "more than a scintilla" of evidence supporting Hartford's denial of Flowers' claim for continuing LTD benefits. *Miller*, 72 F.3d at 1072.

## II. Flowers' Counterarguments are Unpersuasive

Flowers lodges a seemingly endless string of counterarguments in an effort to avoid this straightforward conclusion.[7] To start, Flowers contends that "substantial evidence in the [Administrative Record]" establishes that she is "physically disabled under the [P]olicy." Pl. Mem. 12; *see also* Pl. Mem. 12–15. But Flowers entirely misunderstands the substantial evidence standard of review. The inquiry is *not* whether there is substantial evidence to support *her* claimed disability. Instead, this Court evaluates whether there is "more than a scintilla" of evidence to substantiate the conclusion reached by *Hartford*. *Miller*, 72 F.3d at 1072; *see Hobson*, 574 F.3d at 79 ("Because we find that substantial evidence supported MetLife's denial of Hobson's benefits claim . . . we conclude that the district court properly determined that MetLife acted within its discretion as plan administrator in denying the claim."). Because the medical evidence offered by Flowers does not vitiate the opposing evidence offered by Hartford, Flowers' evidence does not alter the conclusion that Hartford's claim determination was not arbitrary and capricious. *See Ingravallo v. Hartford Life & Acc. Ins. Co.*, 563 F. App'x 796, 800 (2d Cir. 2014) ("The evidence cited by Ingravallo does not vitiate the contrary opinions offered by Hartford's reviewers or render its decision arbitrary and capricious.").[8]

Flowers next attempts to undercut the medical conclusions of Dr. Liva. *See* Pl. Mem. 15–

---

[7] To the extent a counterargument is not directly addressed in this Opinion, the Court has considered and rejected it.

[8] Although Flowers indicates that her medical providers "all concur that [she] is disabled from any occupation," *see* Pl Mem. 15, this suggestion flies in the face of the fact that Dr. Pintauro—Flowers' internist—*agreed* with the findings of Dr. Liva described in the IME Report. Def. 56.1 ¶ 36; AR 1710.

19. She explains that Dr. Liva "only examined [her] for twenty minutes," and therefore contends that Hartford "was not justified in relying" on his conclusions. Pl. Mem. 15, 16. Flowers is incorrect. The record shows that Dr. Liva conducted a "regional examination of [Flowers'] cervical spin, thoracic spine, lumbar spine, and extremities," a "neurological examination of [Flowers'] cervical spine, lumbar spine, and extremities," "muscle testing," reflex testing, compression testing, finger-to-nose testing, and heel-to-toe coordination testing. AR 1644. Although Flowers vaguely complains about the length of the examination and avows that Dr. Liva "failed to perform any clinical testing . . . relevant to her [fibromyalgia]," *see* Pl. Mem. 16, Flowers provides no authority (legal or otherwise) indicating that Dr. Liva's examination was medically insufficient. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."). Indeed, the fact that Dr. Pintauro—Flower's treating internist—agreed with Dr. Liva's conclusions further demonstrate their reliability. And to the extent that Flowers argues that Hartford should have disregarded Dr. Liva's findings because they purportedly conflict with conclusions of some of her other physicians, the Second Circuit has squarely rejected that contention. *See Kruk v. Metro. Life Ins. Co.*, 567 F. App'x 17, 20 (2d Cir. 2014) ("MetLife's choice to accord more weight to some expert opinions rather than others . . . was sufficiently within its discretion to preclude identification of arbitrary and capricious decision making."); *Hobson*, 574 F.3d at 90 ("MetLife is not required to accord the opinions of a claimant's treating physicians 'special weight,' especially in light of contrary independent physician reports.").[9]

---

[9] In her reply brief, Flowers argues for the first time that Dr. Liva erred by "relying mainly on [his] physical exam findings" because "the evaluation of fibromyalgia-related impairments is not amenable to a general physical exam." Pl. Reply 3. Flowers references the Second Circuit's decision in *Green-Younger v. Barnhart*, 335 F.3d 99 (2d Cir. 2003), for support. However, it is well established that "new arguments may not be made in a reply brief." *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 1999). Regardless, in *Green-Younger*, the "consulting physicians . . . did not actually credit [the plaintiff's] diagnosis of fibromyalgia." *Id.* at 108. Unlike in *Green-Younger*,

Flowers' critiques of Drs. Hussain and Becker fare no better. *See* Pl. Mem. 15–19. Although she describes Drs. Hussain and Becker as "file-reviewers," Pl. Mem. 17, "[i]t is well settled that, in denying a claim for benefits under ERISA, the plan administrator may rely on the opinion of independent medical reviewers who have not conducted an examination of the applicant." *Tortora v. SBC Commc'ns, Inc.*, 446 F. App'x 335, 338–39 (2d Cir. 2011) (quoting *Zoller v. INA Life Ins. Co.*, No. 06-CV-112, 2008 WL 3927462, at *13 (S.D.N.Y. Aug. 25, 2008)). Here, as noted, the opinions of Drs. Hussain and Becker were *not* contradicted by Flowers' treating physicians—who did not respond to their requests for review and comment. Def. 56.1 ¶ 88. To the extent that Flowers argues that her physicians still somehow disagreed with the conclusions of Drs. Hussain and Becker, plan administrators may rely on the opinions of independent medical reviewers "even where the reviewer's opinion conflicts with that of the treating physicians." *Tortora*, 446 F. App'x at 339.

Flowers next declares that Hartford unreasonably relied on the findings of Drs. Hussain and Becker because they did not "offer any explanation to support their . . . opinions." Pl. Mem. 19. Quite the opposite, Drs. Hussain and Becker explained that, based on their review of the record, Flowers "should be able to sustain a 40 hours/week schedule without restrictions or limitations" because, among other things, she showed "no indication of synovitis, decreased range of motion, muscle weakness, inability to make a fist, or other manifestations or musculoskeletal impairments." AR 1984. Finally, Flowers asserts without explanation that Drs. Hussain and Becker "fail[ed] to dispute the objective findings [in her] medical records." Pl. Mem. 19. Flowers does not indicate why that fact is relevant, nor does she demonstrate how it undermines their medical conclusions.

---

Dr. Liva *did* credit Flowers' fibromyalgia diagnosis here. He nonetheless concluded that her diagnosis did not prevent Flowers from working 40 hours per week. *See* AR 1674.

11

Flowers also argues that Drs. Liva, Hussain, and Becker failed to adequately account for her reports of subjective pain. *See* Pl. Opp. 7–10. The record does not substantiate her claim. Indeed, even Flowers concedes that "Dr. Liva notes and fully credits [Flowers'] reports of pain." Pl. Opp. 8. However, based on his examination of Flowers, Dr. Liva ultimately concluded that Flowers could "sustain functionality of 8 hours per day, 40 hours per week." Def. 56.1 ¶ 23; AR 1645–46. Similarly, Drs. Hussain and Becker noted that Flowers "reported . . . pain," AR 1980, but concluded that "[t]he objective findings . . . do not support the need for limitation or restrictions." AR 1984. This is sufficient under *Miles v. Principal Life Insurance Company*, 720 F.3d 472 (2d Cir. 2013), which merely held that insurers may not "disregard[] [a claimant's] subjective complaints *without providing any reason for this decision*." *Id.* at 488 (emphasis added). Because Drs. Liva, Hussain, and Becker adequately explained their findings, the Court does not find that Flowers' reports of subjective pain were baselessly disregarded. *See Ianniello v. Hartford Life & Acc. Ins. Co.*, No. 10-CV-370, 2012 WL 314872, at *3 (E.D.N.Y. Feb. 1, 2012) (cleaned up), *aff'd*, 508 F. App'x 17 (2d Cir. 2013) ("Hartford was not required to accept plaintiff's subjective complaints in the absence of objective evidence supporting disability.").[10]

More generally, Flowers suggests that Hartford's denial was arbitrary and capricious because Hartford previously approved her claims and the "medical evidence shows no meaningful changes or improvement in her conditions." Pl. Opp. 5. This argument has no merit. As an initial matter, contrary to Flowers' contention, the record evidence *does* show improvement in Flowers' conditions. Indeed, four doctors (Liva, Pintauro, Hussain, and Becker) independently concluded, based on her current conditions, that Flowers is capable of working 40 hours per week. Although

---

[10] Flowers attempts to distinguish *Ianniello* on the grounds that the district judge in that case adopted a Report and Recommendation issued by a magistrate judge. *See* Pl. Opp. 9. Flowers provides no authority indicating that fact is in any way relevant.

Flowers might argue that her improvements were not "meaningful," her say-so is insufficient to survive a motion for summary judgment. It is noteworthy, too, that any earlier approvals by Hartford were based on the medical evidence available *at that time*. The Court will not fault Hartford for altering its determination based on the most up-to-date medical information, particularly where, as here, the Policy clearly states that "Benefit payments" will stop on "the date You are *no longer* Disabled." AR 87 (emphasis added). Further, regardless of Hartford's previous approvals, the insured *always* has the burden to demonstrate an entitlement to benefits. *See Critchlow*, 378 F.3d at 256. That burden continues even where an insured was previously awarded benefits. *See Ingravallo*, 563 F. App'x at 800 ("Ingravallo bore the burden of establishing, through objective medical evidence, her *continued* inability to work." (emphasis added)); *Fitzpatrick v. Bayer Corp.*, No. 04-CV-5134, 2008 WL 169318, at *9 (S.D.N.Y. Jan. 17, 2008) ("There is nothing in the caselaw suggesting that the burden of proof shifts to the Defendants if the Plaintiff previously received benefits."). Flowers' previous receipt of benefits is therefore immaterial.[11]

Flowers similarly contends that Hartford's decision was arbitrary and capricious because it is in conflict with her "continuing receipt" of Social Security Disability Insurance ("SSDI") from the Social Security Administration ("SSA"). Pl. Mem. 14–15. Flowers' only evidentiary support for this assertion is a letter from the SSA authored in October 2017—nearly *three years before* Hartford denied Flowers' claim—informing Flowers of her monthly SSDI award. AR 1452. The letter is both unhelpful and irrelevant. To start, it contains no information about the *basis* for the award, or any indication that the SSA ever reevaluated Flowers' claim for benefits in light of new

---

[11] Flowers makes much of the fact that a nurse employed by Hartford, Lynne Tyler, concluded that Flowers was "disabled from any occupation." *See* Pl. Mem. 15. But Nurse Tyler reached that conclusion in 2016—*four years before* Hartford issued its denial. *See* AR 252. Moreover, Nurse Tyler based her findings on medical evidence that is now out-of-date. For instance, Nurse Tyler noted that that Flowers experienced "possible seizure[s] (fugue states)" and "severe mental illness." AR 252. Flowers no longer contends that these symptoms prevent her from working. *See* AR 1806 (arguing Flowers "lack[ed] the functional capacity to perform any . . . type of full-time work because of her severe fibromyalgia, cervical radiculopathy, lumbar degeneration, and bilateral carpal tunnel syndrome").

13

medical evidence. *See Ingravallo*, 563 F. App'x at 799 (denial of benefits was not arbitrary and capricious where claimant "presented no documents disclosing the basis for the SSA's decision" and "the record [did] not reflect that the SSA conducted any reevaluation of Ingravallo's condition after its initial award . . . in 2006"). Moreover, claim administrators "are not bound by an SSA's award of benefits." *Id.*; *see Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 443 (2d Cir. 2006) ("[T]he SSA's determination did not bind either the ERISA Plan or the district court."). Thus, Flowers' continuing receipt of SSDI benefits is of no moment.

Nor does the Court find that Hartford's determination is "fatally flawed from a vocational standpoint." Pl. Mem. 19. Flowers contends that the EAR should have identified "an occupation for which [she] is *already* qualified." Pl. Mem. 19. Because the jobs identified by Housley would require "minimal learning," she argues that they are inconsistent with the terms of the Policy. *See* Pl. Mem. 19–20 (emphasis added). The Policy defines "Any Occupation" as "any occupation for which You are qualified by education, training *or* experience." AR 93 (emphasis added). Given the use of the word "or," Flowers need only satisfy *one* of those requirements. The undisputed facts show that she is qualified. Flowers holds a bachelor's degree and is therefore qualified to perform all five occupations included in the EAR by virtue of her education—a fact that Flowers does not contest. *See* Def. Opp. 17–18; Pl. Reply 6. Moreover, as noted in the EAR, the five identified occupations "require no prior experience," "no protracted training," and "use worker traits and habits that [Flowers already] possesses." AR 1726. Thus, Flowers does not demonstrate that the EAR is in any way deficient.

The Court is also unmoved by the suggestion that Hartford failed to meaningfully consider the EAR submitted by Flowers on her administrative appeal. *See* Pl. Mem 20–21. The record evidence demonstrates that Hartford *did* consider Flowers' EAR, *see* Def. 56.1 ¶ 91, but ultimately

credited the EAR performed by Housley.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) (courts may not "impose on plan administrators a discrete burden of explanation"); *United States v. Potamkin Cadillac Corp.*, 689 F.2d 379, 381 (2d Cir. 1982) ("unsupported assertions" insufficient to withstand summary judgment).  The same is true of the FCE.  *See id.*[12]

Accordingly, Hartford's motion for summary judgment is granted and Flowers' cross-motion for summary judgment is denied.

## CONCLUSION

For the above reasons, Hartford's motion for summary judgment is GRANTED and Flowers' motion for summary judgment is DENIED.

The Clerk of Court is respectfully requested to terminate docket entries 48 and 56 and to close this case.

**SO ORDERED.**

**Date:  August 31, 2023**                     **MARY KAY VYSKOCIL**
**New York, NY**                                **United States District Judge**

---

[12] Flowers contends for the first time in her reply brief that Hartford ignored its obligation "[a]s an ERISA fiduciary" to provide her with a "full and fair review."  Pl. Reply 7.  Again, "new arguments may not be made in a reply brief."  *Ernst Haas*, 164 F.3d at 112.  In any event, given the commissioning by Hartford of three *independent* medical reviewers to review Flowers' claim for benefits, the Court is not persuaded that Hartford failed to provide Flowers with a full and fair review.